This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant-plaintiff Jacqueline J. Miller-Wagenknecht has appealed the judgment of the Summit County Court of Common Pleas. This Court affirms.
 I.
On August 31, 1994, Miller-Wagenknecht purchased a home in Munroe Falls. A Munroe Falls tax ordinance required that tax returns be filed no later than April 30 for the previous tax year. April 30, 1995, passed without Miller-Wagenknecht filing a tax return.
Tax administrator Bette Lyons mailed two letters on July 30 and August 23, 1995 to Miller-Wagenknecht at her Munroe Falls address. Miller-Wagenknecht did not respond. Phone calls in September and October of 1995 to Miller-Wagenknecht were unsuccessful as well.
On November 17, 1995, a criminal complaint was filed in the Cuyahoga Falls Municipal Court for failure to file a 1994 tax return. Pursuant to a plea agreement, Miller-Wagenknecht agreed to file a tax return and pay half of the court costs in exchange for the dismissal of the charges.
The next tax year, Miller-Wagenknecht again failed to file a tax return on or before April 30, 1996, for the tax year 1995. Belatedly, Miller-Wagenknecht sent a purported request for extension from Munroe Falls. As the request for extension was untimely made, the request was denied by letter sent to Miller-Wagenknecht on May 22, 1996. Lyons sent another letter to Miller-Wagenknecht on July 31, 1996, reminding her that a 1995 tax return needed to be filed. Miller-Wagenknecht failed to respond to either correspondence.
In a reprise of the previous year, a criminal complaint was filed on September 20, 1996, for failure to file a 1995 tax return. Miller-Wagenknecht belatedly filed her tax return on October 15, 1996. However, the tax return was not complete. The matter proceeded to trial. The trial court, sitting as the trier of fact, denied a pre-trial motion to dismiss for lack of probable cause. At the end of the trial, the court found Miller-Wagenknecht not guilty.
On May 15, 1997, Miller-Wagenknecht filed suit against Munroe Falls and Bette Lyons in her governmental and private capacity in the Summit County Court of Common Pleas alleging malicious prosecution, abuse of process, and civil rights violations. On December 11, 1998, the court of common pleas granted summary judgment against Miller-Wagenknecht. On direct appeal to this Court, the case was reversed and remanded for trial.
Trial commenced on September 19, 2000. The trial court dismissed Bette Lyons in her individual capacity from the case. Ultimately, the jurors found the defendants to be not liable.
Miller-Wagenknecht has now appealed, raising five assignments of error.
 II. ASSIGNMENT OF ERROR I The court erred in its charge to the jury as to the applicable law in such a manner as to be determinative of the outcome, prejudicial to the Plaintiff-Appellant, and therefore making the verdict of the jury contrary to law.
In her first assignment of error, Miller-Wagenknecht claims that the trial court erred when it declined to give a proposed instruction. Specifically, Miller-Wagenknecht claims that the jury should have been charged that they must determine whether she willfully failed to file a tax return pursuant to Cheek v. United States (1991), 498 U.S. 192. Miller-Wagenknecht also claims that the absence of the proposed instruction was outcome determinative of the case. This Court disagrees.
 Inapplicability of Cheek
In Cheek, the United States Supreme Court construed provisions of the federal tax code, namely 26 U.S.C. § 7201 and 7203, and gave effect to the term "willfully" as expressly set forth in those sections. Cheek,supra, at 194-195. The Cheek Court construed the term "willfully" solely as a matter of federal statutory construction. Id. at 199-202. See, also, Bryan v. United States (1998), 524 U.S. 184, 193-194
(Distinguishing the "willfully" analysis of Cheek as involving "highly technical statutes that presented the danger of ensnaring individuals engaged in apparently innocent conduct.").
The instant case does not involve the construction of a highly technical federal statute. Munroe Falls Ordinance 181.99(A)(1) and (11) provides: "Any person who * * * (f)ails, neglects or refuses to make any return or declaration required by this chapter * * * shall be guilty of a misdemeanor." Munroe Falls Ordinance 181.05 requires each taxpayer to file a return on or before April 30 for the previous tax year. Accordingly, Cheek holds no precedential value to the instant case.
 Not Outcome Determinative
Miller-Wagenknecht also cites to Cincinnati v. DeGolyer (1971),25 Ohio St.2d 101, as support for her claim that the jury should have been instructed on the term "willfully" as an element of the criminal charge against her. "A municipal income tax, due and unpaid, is a debt within the meaning of Section 15 of Article I of the Ohio Constitution, and in the absence of a willful failure or refusal to pay, or fraud, one may not be imprisoned for failure to pay such a tax." Id. at paragraph one of the syllabus.
The tax ordinance reviewed in DeGolyer provided that "one who fails, neglects or refuses to pay the tax is guilty of a misdemeanor and may be fined or imprisoned therefor." Id. at 102. Because Section 15 of ArticleI of the Ohio Constitution proscribes imprisonment for debt, theDeGolyer Court concluded that "one may not be imprisoned for the mere failure to pay taxes, in the absence of willful refusal or fraud." (Citation omitted.) Id. at 104-105.
Quite apart from a criminal case, the instant case involved a civil complaint for malicious prosecution. To prove malicious prosecution, a plaintiff must show the following: "(1) malice in instituting or continuing the prosecution; (2) lack of probable cause; and (3) termination of the prosecution in favor of the accused." Trussell v.General Motors Corp. (1990), 53 Ohio St.3d 142, syllabus. Although willfulness must be shown in a criminal case, to prove malicious prosecution in a civil case all that is needed is to show probable cause for the offense. The trial court need not discuss the finer points ofmens rea.
This Court turns then to review the propriety of the trial court's instruction as to probable cause. The trial court charged the jury on probable cause as follows:
 Probable cause is defined as a reasonable ground — a reasonable ground of belief, supported by trustworthy information and circumstances known to the Defendant and sufficiently strong to cause a reasonably careful person, under similar circumstances, to believe that the Plaintiff was guilty of committing the crime of failure to file a City income tax return.
 A person has probable cause to believe and act if a reasonable person would have so believed and acted.
 If you find that the Defendant had probable cause to believe that the Plaintiff was guilty of the crime of failure to file a City income tax when the criminal prosecution — I am sorry. Let me state that again.
 If you find that the Defendant had probable cause to believe that the Plaintiff was guilty of the crime of failure to file City income tax, then the criminal prosecution was lawful.
The foregoing instruction is consonant with the law of Ohio. See 3 OJI 330.03. Accordingly, the trial court properly and sufficiently charged the jury.
Miller-Wagenknecht's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II The verdict of the jury is against the manifest weight of the evidence.
 In her second assignment of error, Miller-Wagenknecht claims the verdict of the jury was not supported by the manifest weight of the evidence. This Court disagrees.
When the manifest weight of the evidence is challenged "an appellate court conducts the same manifest weight analysis in both criminal and civil cases." Ray v. Vansickle (Oct. 14, 1998), Lorain App. Nos. 97CA006897/97CA006907, unreported.
 The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. Moreover, "every reasonable presumption must be made in favor of the judgment and the findings of facts[.]" Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." Id.
At trial, Miller-Wagenknecht set forth three causes of action: malicious prosecution, abuse of process, and violation of civil rights under 42 U.S.C. § 1983.
 A. Malicious Prosecution
As set forth supra in the first assignment of error, the test for malicious prosecution is: "(1) malice in instituting or continuing the prosecution; (2) lack of probable cause; and (3) termination of the prosecution in favor of the accused." Trussell, supra, at syllabus. Reviewing the evidence in the record, Miller-Wagenknecht failed to timely file tax returns in successive years. In 1995, Miller-Wagenknecht failed to timely file a return by the deadline of April 30. Repeated written and telephone correspondence went unreturned. Only on November 17, 1995, was a criminal charge filed for the tax year 1994. The following year, April 30, 1996, came and went without Miller-Wagenknecht filing her tax return. A belated request for extension of time was denied by letter on May 22, 1996. On July 31, 1996, yet another letter was sent to Miller-Wagenknecht reminding her that a tax return needed to be filed. Both written correspondences were never responded to, whereupon a criminal complaint for failure to file a tax return was filed on September 20, 1996. Miller-Wagenknecht's failure to file timely tax returns, and failure to correspond thereafter, are what led to the eventual criminal charges. Based on the record before us, this Court cannot conclude that the jury clearly lost its way based on our review of the evidence.
 B. Abuse of Process
The tort of abuse of process provides a remedy for a related yet different situation to a claim of malicious prosecution: an action that can be brought even though probable cause does exist. See Yaklevich v.Kemp, Schaeffer Rowe Co., L.P.A. (1994), 68 Ohio St.3d 294, 297-298. Abuse of process requires proof that: (1) a legal proceeding is properly initiated with probable cause; (2) the proceeding has been perverted to accomplish an ulterior motive beyond which it was designed; and (3) direct damage ensued from the wrongful use of process. Id. at paragraph one of the syllabus. In Kremer v. Cox (1996), 114 Ohio App.3d 41, 51-52, this Court elucidated on the differences between the tort of abuse of process and the tort of malicious prosecution:
 The tort of abuse of process arises when one maliciously misuses legal process to accomplish some purpose not warranted by law. The key to the tort is the purpose for which process is used once it is issued. Abuse of process does not lie for the wrongful bringing of an action, but for the improper use, or `abuse,' of process. * * * Thus, if one uses process properly, but with a malicious motive, there is no abuse of process, though a claim for malicious prosecution may lie[.] * * * The tortious character of the defendant's conduct consists of his attempts to employ a legitimate process for a legitimate purpose in an improper manner[.]
 Clermont Environmental Reclamation Co. v. Hancock (1984), 16 Ohio App.3d 9, 11, 474 N.E.2d 357. (Citations omitted, emphasis added.) "Simply, abuse of process occurs where someone attempts to achieve through use of the court that which the court itself is powerless to order." Robb v. Chagrin Lagoons Yacht Club (1996), 75 Ohio St.3d 264, 271, 662 N.E.2d 9. * * *
 Even though the tort of malicious prosecution and the tort of abuse of process have different elements, in some situations the same elements which may constitute abuse of process may also support an action for malicious prosecution. In that case, a complaint could allege both causes of action, in separate counts. In such a situation, a consideration of whether probable cause was present to bring the underlying litigation would be the key to determining under which tort theory the action should proceed. Yaklevich v. Kemp, Schaeffer Rowe Co., L.P.A. [(1994), 68 Ohio St.3d 294, 298]. (Emphasis added.)
In Kremer, this Court determined that to sustain an abuse of process claim, the plaintiff must allege and demonstrate the presence of probable cause. See, e.g., Gunaris v. Holiday Lakes Property Owners Association,Inc. (Feb. 12, 1999), Huron App. No. H-98-032, unreported ("One of the elements essential to an abuse of process claim is that the offending action must have been instituted with probable cause. * * * In this case, the trial court found that appellants only alleged that the initiation of the initial complaint against them was "without probable cause." Nothing in the complaint alleges, in the alternative, that the acts complained of were instituted with probable cause as required to establish a claim for abuse of process. Therefore, since an essential element was missing from the complaint, the trial court properly dismissed appellants' claim for abuse of process[.]") (Citations omitted.)
In the instant case, Miller-Wagenknecht does not allege or provide any evidence of probable cause, and in fact argues that there was no probable cause to support the charges against her. Based on this evidence, this Court cannot say that the jury clearly lost its way in finding no liability for abuse of process.
 C. 42 U.S.C. § 1983 In her third cause of action, Miller-Wagenknecht alleged a violation of 42 U.S.C. § 1983, which provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress[.]
Miller-Wagenknecht asserts that under the foregoing provision of law her rights of due process and equal protection were violated. Miller-Wagenknecht decries that: (1) she was "unilaterally investigate[d]"; (2) in the second case, did not receive notice of the denial of her extension to file tax return; (3) failed to assign a fine for late filing instead of pursuing criminal charges; (4) Munroe Falls did not offer her the option of filing a tentative return; and (5) the absence of criminal charges against her husband, Carl Wagenknecht (counsel for appellant) demonstrates a differing treatment connoting an equal protection violation.
This Court is not surprised that a governmental entity might choose to "investigate" a criminal offense without consulting the subject of the investigation. If unilateral investigations were held to produce constitutional error then all prisons would be laid bare. This Court cannot find, nor does Miller-Wagenknecht set forth, any authority supporting her claim.
The mere existence of other remedies does not compel Munroe Falls to consult with Miller-Wagenknecht, the reluctant taxpayer, about which remedy would be most convenient and agreeable for her, and conform their actions to her will. It is well settled that the government enjoys prosecutorial discretion in its charging decisions, so long as it does not discriminate against any class of defendants. United States v.Batchelder (1979), 442 U.S. 114, 124. No such class discrimination is alleged by Miller-Wagenknecht. The absence of criminal charges against Carl Wagenknecht does not give rise to a constitutional question. Likewise, notice of a denial of a request for extension of time to file a tax return, made after the tax return was due, does not assume a constitutional dimension, and is irrelevant to the prosecutor's decision to charge Miller-Wagenknecht for failure to file a timely tax return.
In relation to Miller-Wagenknecht's other claims, recently this Court has expounded on the application of 42 U.S.C. § 1983 to actions for malicious prosecution and abuse of process:
 "In researching the use of a claim of malicious prosecution as the basis for a Section 1983 action, we have found that the question of whether such a claim is actionable under Section 1983 is a subject `on which there is an embarrassing diversity of judicial opinion.' Albright v. Oliver (1994), 510 U.S. 266, 271, 127 L.Ed.2d 114, 121, fn. 4, 114 S.Ct. 807, * * *." Broadnax v. Greene Credit Serv. (1997), 118 Ohio App.3d 881, 889, 694 N.E.2d 167. However, the United States Court of Appeals for the Sixth Circuit has recognized such a cause of action. Broadnax, 118 Ohio App.3d at 889. To establish such a cause of action, one must plead and prove the state tort elements for malicious prosecution as well as show that one was deprived of a right secured by the Constitution and laws of the United States under color of state law, pursuant to Section 1983. Id. at 889-90. Even if one were "able to show all the elements of the state tort, a Section 1983 action is only proper when `the misuse of legal proceedings is so egregious as to subject the aggrieved individual to deprivation of constitutional dimension.'" (Citation omitted.) Id. at 890. * * *
 Mr. Cochran also must plead and prove the essential elements of the state tort to maintain an action for abuse of process under Section 1983. Broadnax, 118 Ohio App.3d at 890. * * * Mr. Cochran specifically avers in his complaint that Norton's actions were "without probable or reasonable cause[.]" Hence, as an action for abuse of process must be based on legal proceedings set in motion in proper form and with probable cause, summary judgment was properly entered on this claim.
Cochran v. Norton (Aug. 1, 2001), Summit App. No. 20418, unreported. This Court has already determined that the jury's finding of no liability for malicious prosecution and abuse of process was supported by the manifest weight of the evidence. Therefore, this Court cannot conclude that the alleged violations were so egregious as to subject Miller-Wagenknecht to a deprivation of constitutional dimension.
The second assignment of error is overruled.
 ASSIGNMENT OF ERROR III The trial court erred by allowing attorney misconduct, in violation of his duty as an officer of the court, as the jury was intentionally misled, resulting in an unfair trial.
In her third assignment of error, Miller-Wagenknecht claims that opposing counsel engaged in misconduct during closing argument, giving rise to reversible error. However, Miller-Wagenknecht did not object to the comments of opposing counsel during closing argument. Where a party fails to timely object to improper comments pronounced in a closing argument at a time when the trial court could correct the record, then the party has waived the right to challenge the alleged error on appeal.Koczan v. Graham (Sep. 27, 2000), Lorain App. No. 98 CA007248, unreported. Therefore, the third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV The trial court erred when it dismissed Bette Lyons from the law suit [sic] on all counts in her individual capacity.
In her fourth assignment of error, Miller-Wagenknecht claims the trial court erred when it dismissed Munroe Falls tax administrator Bette Lyons from the case in her individual capacity. This Court disagrees.
Civ.R. 50(A)(4) provides:
 When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
A motion for directed verdict tests the legal sufficiency of the evidence presented; accordingly, neither the weight of the evidence nor the credibility of witnesses may be properly considered. Cater v. Cleveland
(1998), 83 Ohio St.3d 24, 33, citing Strother v. Hutchinson (1981),67 Ohio St.2d 282, 284. If substantial, competent evidence has been presented from which reasonable minds could draw different conclusions, the motion must be denied. Wagner v. Roche Laboratories, Inc. (1996),77 Ohio St.3d 116, 119. Because a directed verdict presents a question of law, we review the trial court's judgment de novo. Hardy v. GeneralMotors Corp. (1998), 126 Ohio App.3d 455, 462, citing Howell v. DaytonPower Light Co. (1995), 102 Ohio App.3d 6, 13.
Regarding the claims for malicious prosecution and abuse of process, both arising under state law, Bette Lyons was acting in her capacity as tax administrator when a criminal complaint was filed upon the alleged violations of the Munroe Falls tax ordinance. Under R.C. 2744.03(A)(6)(a) and (b), Lyons's actions were immune from liability unless the actions undertaken were manifestly outside the scope of her employment, or were done in bad faith with a malicious purpose. Miller-Wagenknecht failed to timely file her tax returns, and Lyons followed the letter of the law and caused a criminal complaint to be filed.
With regards to the claim of equal protection and due process violations under 42 U.S.C. § 1983, immunity under R.C. 2744.03 does not apply to bar a federal civil rights claim. R.C. 2744.09(E). See, also, Wohl v. Cleveland Bd. of Educ. (1990), 741 F. Supp. 688, 690-691.
However, a qualified immunity applies. Lyons pled the defense of qualified immunity in her answer. In Martin v. Eastlake (N.D.Ohio. 1988), 686 F. Supp. 620, 624-626, the District Court for the Northern District of Ohio elegantly set forth the applicability of qualified immunity to 42 U.S.C. § 1983 actions:
 Unlike absolute immunity, qualified immunity does not provide total protection to a defendant in a [sec.] 1983 case. * * * Qualified immunity, in its simplest terms, is given to an officer who may have violated a constitutional right of a person, if the officer's actions are such that a reasonable officer could have believed that the actions were lawful, in light of clearly established law and the information the officer possessed. In effect, qualified immunity may shield from liability, an officer who violates another's constitutional rights.
* * *
 The focus of the qualified immunity defense * * * is not on whether the constitutional right was established or not, but is on whether a reasonable [public official] would have believed that the actions violated clearly established constitutional rights.
See, also, Bothke v. Fluor Engineers Constructors, Inc. (C.A.9, 1987), 834 F.2d 804, 810-812.
In the instant case, Lyons did plead the defense of qualified immunity in her answer. "[F]ollowing the presentation of the plaintiff's case * * * a defendant may move for a directed verdict on either or both grounds that the plaintiff has failed to prove a constitutional violation or that the plaintiff has failed to prove sufficient facts to deny the defendant the qualified immunity defense." Martin, supra, at 629. Lyons was dismissed from the case upon a motion for directed verdict.
Miller-Wagenknecht failed to timely file her tax returns, and after meaningful delay, Lyons referred the matter for criminal prosecution in successive years. In light of the information that Lyons possessed, her conduct was within the bounds of the law when she referred the matter for prosecution. Being a tax collector may not be a popular job, but the state of the record is that Lyons was doing her job and nothing more. Miller-Wagenknecht has failed to adequately rebut the assertion of qualified immunity by Lyons.
The fourth assignment of error is overruled.
 ASSIGNMENT OF ERROR V The Court erred when it did not permit Attorney Tony Dalayansis to testify regarding the merits of criminal complaints brought by Bette Lyons, the testimony of Dwayne Jones, and the pattern and practice of Munroe Falls.
In her fifth assignment of error, Miller-Wagenknecht claims the trial court should have allowed testimony from Attorney Tony Dalayansis regarding the experience of two of his clients who were not parties to the case, his opinion as to the merits of the criminal complaint, and inquiry into the custom and practice of Munroe Falls for charging tax violators. This Court disagrees.
It is axiomatic that the admission of relevant evidence lies within the sound discretion of the trial court. Rigby v. Lake Cty. (1991),58 Ohio St.3d 269, 271. An abuse of discretion is more than an error of law or judgment, it implies an unreasonable, arbitrary, or unconscionable act by the trial court. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
In the instant case, the trial court voir dired the witness proferred by Miller-Wagenknecht, Attorney Dalayansis. During the voir dire it became clear that Attorney Dalayansis testimony was not about the course of practice or course of conduct of Munroe Falls, but rather was a commentary on the credibility of Lyons as far as sending mail or not sending mail in the past. Likewise, the proferred testimony could not be construed as impeachment evidence against the prosecution initiated by Munroe Falls because there was no contradiction to evidence in the record involving Miller-Wagenknecht. Moreover, the testimony of Attorney Dalayansis was a litany of improper hearsay information received from his former clients that would not be admissible at trial. See Evid.R. 801(C) and 802. Stated simply, Miller-Wagenknecht's claim that Attorney Dalayansis was offered to give admissible course of conduct and practice testimony of Munroe Falls does not withstand review.
This Court concludes that any such testimony would have been irrelevant and confused the issues relating to the central question of whether there was probable cause to file a criminal charge under the Munroe Falls tax ordinance. See Evid.R. 402 and 403. Accordingly, this Court cannot conclude that the trial court abused its discretion in excluding the testimony.
The fifth assignment of error is overruled.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
Exceptions.
BAIRD, P.J., WHITMORE, J. CONCUR.